## Luckenbaugh's Estate

*Robert S. Spangler*, for accountant.

*Palmer C. Bortner*, for claimant.

GROSS, P. J., March 7, 1947.—At the audit of the first and final account of Sarah A. Myers, executrix of the estate of Roy H. Luckenbaugh (also known as Roy H. Lucabaugh), deceased, his widow, Gertie A. Lucabaugh, presented a claim for the sum of $300, as the designated beneficiary of benefits payable upon the death of her husband by a local labor union of which he was a member in good standing at his death.

From the evidence submitted, we find the following facts:

1. Decedent died January 12, 1946, leaving to survive him his wife and three daughters, one a minor 17 years of age. He left will dated January 11, 1946, in which he appointed Sarah A. Myers executrix of his estate, and to whom letters testamentary were granted.

2. His will contained the following depositive items: "I make her (Sarah A. Myers) full beneficiary of a 3000 Dollar Insurance Policy also title of ownership of car also all my tools. To my wife I grant all the Social Security."

3. Decedent was not seized of any real estate. The inventory and appraisement of his personal property is as follows:

| | |
|---|---:|
| Proceeds of $3,000 Blaw-Knox group insurance with Metropolitan Life Insurance Company | $3,000.00 |
| Sick and hospital insurance with Metropolitan Life Insurance Company | 123.29 |
| Auto accident insurance | 106.80 |
| Proceeds of 12 $25 war bonds | 225.00 |
| Interest on war bonds | 3.86 |
| Last pay check | 11.34 |
| Tools | 5.00 |
| 1938 Chevrolet automobile | 100.00 |
| Cash in bank | 526.58 |
| Total appraisement | $4,001.87 |

4. The United Brotherhood of Carpenters and Joiners of America is an unincorporated labor union affiliated with the American Federation of Labor, having its principal office located at the City of Indianapolis, Indiana, and will hereinafter be referred to as the "union".

5. Section 1-A of the constitution of the union provides that it "shall consist of an unlimited number of local unions and members, subject to its laws and usages and shall not be dissolved while there are three

(3) dissenting Local Unions". One of said local unions is No. 191 of the City of York, Pa., of which this decedent was a member in good standing at the time of the trade".

6. The objects of said union are set forth in section 2 of the constitution which provides as follows: "The objects of the United Brotherhood are: To discourage piece work, to encourage an apprentice system and a higher standard of skill, to cultivate friendship, to assist each other to secure employment, to reduce the hours of daily labor, to secure adequate pay for our work, to establish a weekly pay day, to furnish aid in cases of death or permanent disability, and by legal and proper means to elevate the moral, intellectual and social conditions of all our members, and to improve the trade."

7. Under title "Division of Laws", section 8-A of the constitution of the union provides as follows: "The Constitution shall be compiled in three parts, viz.: Constitution, General By-Laws, General Laws", and section 8-D provides as follows: "The General Laws, which shall contain all matters pertaining to the relations of members, Local and Auxiliary Unions and District, State and Provincial Councils to each other, and all employes and others outside the jurisdiction of the United Brotherhood".

8. Under the title, "Members Entitled to Donation" section 48-A of the general laws provides as follows: "On the death of a member in good standing, his wife, or legal heirs as named on his application, shall be entitled to the member's funeral donation as prescribed in the Constitution and Laws of the United Brotherhood. A member may change his beneficiary provided, the change is made to wife, or blood relative. Such change shall be made on blank form to be furnished Local Unions by the General Secretary. The member making a change of the beneficiary shall sign the form

of change in the presence of President and Recording Secretary of his Local Union", and section 48-B provides as follows: "If a member in good standing dies without leaving any legal heirs, the Local Union shall see him respectably interred. The officers or a committee of the Local Union shall attend his funeral and the United Brotherhood shall pay the funeral expenses, but in no case shall these expenses exceed the full amount of donation to which the member is entitled at time of death, nor shall the United Brotherhood be held liable for any further donations in the name of the deceased".

9. Under the title, "Presentation and Payment of Claims", section 53 provides in substance that when a death of a member occurs, the person applying for donation shall present to the local union a certificate of the facts from the attending physician and if approved by the local union, the same shall be forwarded by the financial secretary to the general treasurer, and if the claim is approved by the general treasurer, he shall at once forward to the financial secretary of the local union a bank check or draft for the amount of the donation due and payable to the person entitled to receive it.

10. Upon the death of this decedent, the financial secretary of the local union, following the accepted practice of making proofs of claim, prepared a proof of claim for benefits payable at decedent's death and presented the same to the widow of decedent so that she might have knowledge and understanding of the presentation of the claim. This prepared proof of claim was forwarded by the financial secretary of the local union to the general treasurer of the union at Indianapolis, whereupon a check made payable to the executrix in the sum of $300, the amount of the donation, was forwarded to the financial secretary of the local union, who delivered the same to the executrix.

11. In decedent's application for membership, filed on September 9, 1940, on the form furnished by the union, the decedent designated his wife, "Gertie A. Luckenbaugh", who is also known as "Gertie A. Lucabaugh", as beneficiary of benefits payable at his death.

12. Decedent and his wife had not been living together since July 26, 1936, when, as she testified, without contradiction, that she "had to leave him or she would not have had any friends". They never lived together thereafter, although he visited his wife "pretty near" every week and she nursed him a few years before his death, when he had suffered injuries from an accident. For the period of three years he had boarded at the home of Sarah A. Myers, the executrix. His wife did not visit him at his boarding place at any time and did not visit him during his last illness because she did not know he was sick. When decedent became sick he was removed to the West Side Hospital on Sunday evening and died at the hospital the following Saturday. His wife received notice of his death and assisted the executrix in making the arrangements for his funeral, although she did not pay, or obligate herself to pay any part of his funeral expenses.

13. The executrix in her first and final account charged herself with the amount of the appraisement of the personal property and with the funeral donation of $300. She took credit in her account for the payment of costs of administration, decedent's debts and for the payment of his funeral expenses in the sum of $533. The account shows a balance for distribution of $2,238.60.

### Discussion

The executrix, as such, and as legatee under decedent's will contends that the "funeral donation" payable at the decedent's death under section 48-A of the general laws, above quoted, is impressed with a trust

in her hands for the payment of decedent's funeral expenses.

The widow's contention is that because she was designated in her husband's application for membership in the local union as the beneficiary of the "funeral donation", negatives the idea that the primary purpose underlying the payment of the fund in question was to provide a fund with which to pay decedent's funeral expenses, but rather the purpose of the union, as expressed in its constitution and laws, was to provide a fund in the nature of insurance for her as the named beneficiary.

The executrix and legatee, to sustain her contention, relies entirely on the words, "funeral donation", being interpreted to mean "funeral expenses".

In Klinger, Admr., etc., et al. v. Philadelphia Local Union No. 2, 58 D. & C. 541, Judge Milner held that "the determination of whether a benefit paid by a beneficial society or other voluntary association paying a benefit upon the death of a member is a funeral benefit, and is impressed with a trust for the payment of funeral expenses, or is a death or mortuary benefit payable to a named beneficiary without such a trust imposed upon it, does not necessarily depend upon the name that is applied to it in the laws of the society or organization, but upon an interpretation of the meaning and intent of the constitution and by-laws as a whole".

It has frequently been held that the bylaws of a mutual benefit association not inconsistent with the charter, must, in the very nature of the case, govern among its members: Fantini's Estate, 150 Pa. Superior Ct. 495; Linaka v. Firemen's Pension Fund of Philadelphia, 149 Pa. Superior Ct. 458; Feldman v. Brith Achim Beneficial Association, 86 Pa. Superior Ct. 409.

In Fantini's Estate, supra, decedent was a member of driver-salesmen's union and under the bylaws of the union $1,000 was payable as "death benefits" on

the death of a member, and the member was authorized to designate the beneficiary of the fund. On a form supplied by the union he authorized the union

> "to pay over any death benefit that may be due to me to
> To my estate..................4 children
>      (Name)        (Relationship)
> as my beneficiary."

On his death, the union interpreted the designation as naming the four children the beneficiaries, but the Superior Court reversed, and in its opinion it held that the union was not a fraternal benefit society, but was a labor union, a branch of the A. F. of L., organized to further a variety of interests to its members and that payment of "death benefits" was incidental only to the general broad purposes of the union. To this extent, it assumed the character of a mutual benefit society, and there being no statute which denies the right of a member of an association such as a labor union to direct the payment of death benefits to his estate and in the absence of a limiting provision in the constitution or bylaws of the union, the member's designation of his estate as beneficiary is valid.

In the case before us, we are called upon to determine who is entitled to receive the death benefits payable to a deceased member of a labor union which are termed in its constitution and bylaws as a "funeral donation".

Counsel for the executrix and legatee has cited numerous cases in his brief to support the idea that the words "funeral donation" mean "funeral expenses" and that, therefore, the moneys paid by the union to her as executrix, was a proper payment and that the same were impressed with a trust for the payment of decedent's funeral expenses.

The line of cases relied upon by counsel for the executrix are as follows: Hurst's Estate, 25 Dist. R. 1054; Haas' Estate, 3 Pa. C. C. 345; Hyneman's Estate, 2 W. N. C. 571; Freed's Estate, 1 D. & C. 308; Stitzel, Executrix, v. Smith et al., 25 D. & C. 223; Miller v. Wolf, 18 Lanc. 105; Estate of Thomas Holmes, 18 Lack. Jur. 124; Hinkle v. Penna. R. R. Co., 29 Dist. R. 1079; Walter's Estate, 12 Dist. R. 767; Carl v. Hirsch, 19 Berks 254; Gross v. Duncannon Workingmen's Burial Association, 17 Dist. R. 543; Estate of James W. Martin, 2 Chester 47; Nixon's Estate, 6 W. N. C. 496; Estate of Francis Luke, 17 Phila. 517.

We have carefully examined all of the above decisions and find that they nearly all related to fraternal benefit societies, and in every instance the death benefits were specifically directed under the fundamental law of the association to be applied to the payment of the funeral expenses of the deceased member, whether or not the member had designated a beneficiary. This line of cases is not decisive of the case before us for the reason that in the instant case, section 48-A of the constitution and laws of the union do not specifically designate the "funeral donation" as a funeral expense fund.

We again refer to Klinger, Admr., v. Philadelphia Local Union No. 2, etc., et al., above referred to in which we had the opportunity of reading the entire opinion filed by Judge Milner. In that case, William Buck, decedent, was a member in good standing of Philadelphia Local Union No. 2 of the International Brotherhood of Bookbinders. The constitution of the brotherhood provided for the payment of a "funeral benefit claim" in the sum of $500 to Buck at the time of his death, and that a member had a right to designate the beneficiary of the fund. It further provided that the local union's secretary shall keep a record of the beneficiary designated by each member to whom

benefits shall be paid and in the event that no beneficiary is named by a member, the local union shall pay all necessary burial expenses. Buck, decedent, by an instrument in writing, filed with the local union, designated that the beneficiary of the "funeral benefit claim" should be Max Bittorf. A bill in equity was filed against the local union and Max Bittorf by the administrator of Buck's estate to prevent payment of the "funeral benefit claim" to Max Bittorf and to compel payment of the same to Buck's estate. The court held that Bittorf was entitled to the payment of the "funeral benefit claim" and that it was not impressed with a trust for the payment of Buck's funeral expenses.

From a practical and factual viewpoint, we see no substantial difference between the case of Buck's Estate and the case at bar, and we regard it as authority for holding that the widow, Gertie A. Lucabaugh, is entitled to the funds here in question. See also Smith v. Theatrical Mechanical Beneficial Association, 5 Dist. R. 326; Estate of Martin Metzroth, deceased, 26 Lanc. 257; Zinn's Estate, 2 Dist. R. 801. In Beidelman's Estate, 4 N. J. Misc. 549, 133 Atl. 873 (1926), decedent, at the time of his death, was a member of a council of a fraternal organization and under its laws, there became payable at his death the sum of $1,000 which was termed by the constitution of the association "funeral benefits".

These benefits, under section 4 of its constitution, were payable to the widow of the deceased member, unless he exercised his right under section 6 thereof to change the beneficiary. He did not designate any beneficiary and, therefore, upon his death the money was paid to his widow, who permitted the same to go into her husband's estate against which she filed her claim for the fund.

Section 7 of the fraternal organization further provided that a member wishing his council to see that

he is properly buried, may apply to the board of managers for a certificate directing the council to take charge of his remains and bury the same, as per his instructions and pay the balance to his beneficiary named, and if no beneficiary was named, the balance should revert to the council.

In construing the constitution and bylaws of the organization of which deceased was a member, the court held that the whole scheme of it indicated that the beneficial payment was in the nature of insurance for the benefit of decedent's widow and not for the purpose of paying his burial expense. It will be noted in this case that the fund in question was termed "funeral benefits", while in the case at bar, the fund is designated as a "funeral donation" which is quite a similar appellation.

Without reciting the detailed facts, we wish to refer to Carpenter, Admr., v. Pennsylvania Railroad Employees Provident and Loan Association, 324 Pa. 540, 542, Justice Kephart of the Supreme Court said with reference to somewhat similar facts in referring to the rules and regulations of an association creating a contract:

"It is in the nature of a contract for the benefit of a third party as donee beneficiary, with a reservation of the power to change the beneficiary or otherwise vary the terms of a gift. See Restatement of Contracts, Section 142 and Comment (a)."

We conclude, from a careful study of the fundamental laws of the union in connection with the authorities referred to herein, that the "funeral donation", payable at the death of Luckenbaugh, was payable to his wife, the designated beneficiary, without being impressed with any trust for the payment of his funeral expense.

Our conclusion is further supported by the provisions of section 48-B of the constitution which pro-

vides that only if a member dies without leaving legal heirs, then the "funeral donation" shall be applied to the payment of his funeral expense. This last provision negatives the idea that upon the death of a member who designated his beneficiary, the "funeral donation" shall be used for the payment of his funeral expense. We will allow the claims of the widow and an award will be accordingly made in the schedule of distribution.